# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal No. 05-0018 (JDB)** |
| **ROBERT E. QUINN,** **MICHAEL H. HOLLAND,** **MOHAMMED A. SHARBAF** | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court are several motions filed by defendants Robert E. Quinn and Michael H. Holland ("defendants") and the government related to the availability and admissibility of evidence in this criminal matter, which involves charges of violating the U.S. trade embargo with Iran. Because the background of this case was outlined at length in the Court's Memorandum Opinion of October 21, 2005, no further rehearsal is required here. For the reasons that follow, the Court will: (1) grant in part and deny in part defendants' motion to compel the government to produce evidence they assert the prosecution is obligated to disclose under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); (2) defer ruling at this time on defendants' request for a hearing on the admissibility of testimony about alleged co-conspirator statements; (3) deny defendant Quinn's motion to suppress portions of his post-arrest statements to federal agents; (4) defer ruling on the government's motion under Rule 404(b) of the Federal Rules of Evidence to allow testimony about statements allegedly made by the defendants, and defendants' related motion to exclude the government's proffer of defendants' alleged false statements; and (5) deny

defendant Holland's motion to exclude statements made to federal agents by Quinn and defendant

Quinn's motion to exclude statements made to the agents by Holland, in light of the government's

pledge to refrain from eliciting testimony from the agents about statements made by either

defendant that tend to implicate the other.

## <u>ANALYSIS</u>

I.    **Motion to Compel Government Disclosure of Purported <u>Brady</u> Material**

Defendants have asked this Court to order that the government immediately produce the

following evidence, which they assert the prosecution must disclose under <u>Brady</u> and its progeny:

(1) all statements made to law enforcement officers by David Tatum, Clark Material Handling

Company's ("CMHC") executive vice president for parts; (2) "any information that would tend to

mitigate the potential sentences faced by the defendants in the event that one or both are

convicted of an offense charged" (more specifically, as defendants stated in a letter to the

government, they request information about prior cases involving enforcement of trade

embargoes, including information about civil settlements and pleas agreements, <u>see</u> Defs.' Mem.

Supp. Mot. to Compel at Ex. D); and (3) "any statements that the government intends to

introduce at trial as coconspirator statements under Fed. R. Evid. 801(d)(2)(E)." <u>See</u> Defs.' Mot.

to Compel at 1-2.

As the <u>Brady</u> rule has developed over time, it has come to constitutionally require state

and federal prosecutors to disclose to the defense -- even without request -- any evidence that is

in the possession, custody, or control of the government and is favorable to the defendant with

respect to questions of guilt (which includes information that is exculpatory, as well as

information that might be used to impeach a government witness) or punishment (that is,

information that might mitigate the potential sentence).  See generally United States v. Tarantino, 846 F.2d 1384, 1416 (D.C. Cir. 1988) (stating the rules of criminal due process articulated in Brady and subsequent cases).  The government must disclose Brady information in sufficient time that the defendant is able to "use the favorable material effectively in the preparation and presentation of its case."  United States v. Pollack, 534 F.2d 964, 973 (D.C. Cir. 1976).  Furthermore, "[t]he existence of a [federal prosecutor's] duty to disclose witness statements at trial pursuant to the Jencks Act, 18 U.S.C. § 3500, does not eviscerate the government's *Brady* obligation to disclose witness statements well in advance of trial if portions of those statements also fall under *Brady*."  See United States v. Hsia, 24 F.Supp. 2d 14, 29 (D.D.C. 1998).

The Brady rule does not come into play, however, unless the favorable information is "material" to guilt or punishment.  That means the information must be more than simply relevant, but it is not limited to information that is dispositive.  The Supreme Court has explained that Brady's materiality standard requires that there be "a reasonable probability" that disclosure of the information to the defense would have led to a different result in the proceeding.  See Kyles v. Whitley, 514 U.S. 419, 433-34 (1995).  Framed in prospective terms, the materiality prong of Brady requires advance disclosure to defendants of any information that, if presented to a jury, would likely be given substantial weight in deliberations as to guilt or punishment.  "It is the government's responsibility in the first instance to determine whether information in its possession" meets this materiality standard.  See Hsia, 24 F.Supp. 2d at 30.  But, as another judge of this court has said, "courts in this jurisdiction look with disfavor on narrow readings of the government's *Brady* obligations."  Id.

In this case, the government has agreed to turn over all of its "Jencks material, including

witness statements," one week before the start of trial, which now is scheduled to begin as early as November 28, 2005.  See Gov't Opp. to Defs.' Mot. to Compel at 5.  This would seem to encompass both the first and third items sought in the defendants' motion: all statements by Tatum (who is expected to testify at trial) and the statements of any witness who might testify about out-of-court declarations made by alleged co-conspirators.[1]  Although the government asserts that none of these statements contain exculpatory material, it does not deny the possibility that defendants will find impeachment information therein.  See id.  Impeachment material is not as readily identifiable as is potentially exculpatory evidence or sentence-mitigating evidence, but Brady nonetheless brings such information within its ambit.  If the government is in possession of any material that would substantially undercut the credibility of one or more of its witnesses, that information is covered by the Brady duty to disclose.  See United States v. Bagley, 473 U.S. 667, 676 (1985).

The government contends that, to the extent material in its possession contains information that could be used by the defense for impeachment of prosecution witnesses, disclosure one week prior to trial fulfills the government's Brady duty.  See Gov't Opp. to Defs.' Mot. to Compel at 5.  There are no hard-and-fast rules by which courts can decide what constitutes timely pre-trial disclosure of Brady material, and this Court does not have authority to create such a rule.  The Court also is mindful that its role is not "to 'referee ... disagreements about materiality and supervise the exchange of information.'"  Hsia, 24 F.Supp. 2d at 30 (quoting United States v. McVeigh, 954 F.Supp. 1441, 1451 (D. Colo. 1997)).  Nevertheless, in

---

[1] The witness statements presumably would include the content of the alleged co-conspirator declarations.

-4-

light of the exigencies of this trial -- which the parties anticipate could last as long as two weeks -
- and taking into account that the government has not offered a compelling justification for

continuing to withhold witness statements,[2] the Court will order the government to transmit to

defendants all witness statements that contain potential Brady material two weeks in advance of

the start of trial.  In practical terms, this means the government will be required to surrender the

information just one week earlier than it had planned, but it will ensure that defendants have

ample time to review the material for possible use at trial.

As for the second item sought by defendants -- government information about prior cases

involving enforcement of trade embargoes and related civil settlements and pleas agreements --

the defendants fall short of the requirement that they demonstrate such information would be

material to sentencing.  Defendants' demand amounts to an exceedingly broad discovery request

for government records and data.  The government is correct that Brady does not require it to

"serve as the defense team's research arm."  See Gov't Opp. to Defs.' Mot. to Compel at 6.  The

Court's conclusion is informed, in part, by its reading of cases dealing with an analogous area of

the law -- efforts by criminal defendants to obtain information needed to raise a selective-

prosecution challenge.  In the leading case on the subject, United States v. Armstrong, 571 U.S.

456 (1996), the Supreme Court held that, before a defendant can obtain discovery in aid of his

selective-prosecution defense, the defendant first must make a credible showing that the

government has treated differently others who were in similar situations.  In Armstrong, the

Court expressed significant concerns about "divert[ing] prosecutors' resources" by ordering the

_____

[2] Were the government truly concerned about witness tampering or intimidation, it seems
unlikely that they would be willing to turn over witness statements even one week before trial.

government to "assemble from its own files documents which might corroborate or refute the defendant's claim."  Id. at 468.  Before a court should require that to be done, the defense must come forward with some evidence to legitimize its inquiry, the Court said.  Although the present situation is not perfectly analogous to that presented in Armstrong, such a credible-showing prerequisite seems equally appropriate in the context of a motion to compel disclosure of alleged Brady material relating to differential treatment, where production of the information would require a not-insignificant expenditure of prosecution resources.  Here, the defendants have failed to make a convincing case that their request would turn up any material that would be relevant to, let alone mitigating of, sentencing.  Therefore, the Court will deny defendants' second Brady request.

## II.   Defense Request for Hearing on Admissibility of Testimony About Alleged Co-conspirator Statements

In their Brady motion, defendants also request that the Court hold a pre-trial hearing to determine the admissibility of statements by alleged co-conspirators that the government may seek to offer at trial through the testimony of others, as permitted by Fed. R. Evid. 801(d)(2)(E) (excluding from the hearsay rule out-of-court statements made by a co-conspirator during the course and in furtherance of the conspiracy).  Such a hearing would be for the purpose of testing whether the prosecution can establish by a preponderance of the evidence -- as a precondition of admissibility under Rule 801(d)(2)(E) -- that the defendants and the declarant(s) were con-conspirators and that the statements being offered were made during the course and in furtherance of the conspiracy.  See Bourjaily v. United States, 483 U.S. 171, 175-76 (1987).

It is, in some circumstances, advisable to hold a hearing on 801(d)(2)(E) admissibility in

advance of trial, but that practice often is impractical and overly burdensome for witnesses --

particularly where the alleged conspiracy that forms the basis for admission of the statements

also forms the basis for one of the criminal offenses charged.[3]  Indeed, in cases where defendants

face a conspiracy charge, a hearing on the admissibility of co-conspirator statements has the

potential to devolve into "a 'mini-trial' out of the presence of the jury to determine once and for

all whether the government will present sufficient independent evidence of the conspiracy to the

jury."  See Jackson, 627 F.2d at 1218.  Here, the government, in response to the Court's earlier

dismissal of the purported conspiracy charge under 50 U.S.C. § 1705(b), has now obtained a

superseding indictment charging the defendants under the general federal conspiracy statute at 18

U.S.C. § 371.  The Court, therefore, believes that the proper course is to consider the request for

a Rule 801(d)(2)(E) admissibility hearing closer to the time when such statements might be

offered at trial, when the relevant issues will be better focused and developed than they are now.

That is not to say that the Court will, at that time, find it necessary to hold a hearing

before ruling on 801(d)(2)(E) admissibility.  See Jackson, 627 F.2d at 1218 (observing that,

where "witnesses are in possession of both hearsay testimony of co-conspirators and evidence

that independently tends to prove the existence of the conspiracy," it might be more expeditious

to admit the evidence "subject to connection," rather than to hold a separate admissibility

hearing, in order to avoid "taking the testimony of such witnesses piecemeal"); United States v.

Edelin, 128 F.Supp. 2d 23, 45-46 (D.D.C. 2001) ("A hearing to make an advance determination

---

[3] Prosecutors need not, however, charge a conspiracy offense in order to introduce evidence of out-of-court statements by alleged co-conspirators under Rule 801(d)(2)(E).  Rather, "[w]hat must be proved ... is merely that a combination existed between the third parties and the defendant."  See United States v. Jackson, 627 F.2d 1198, 1216 (D.C. Cir. 1980).

of conspiracy is unnecessary for the Court's determination by a preponderance of the evidence that a conspiracy existed.").  Rather, the Court simply is concluding that it is premature, at this preliminary stage of the proceedings, to decide whether to hold such a hearing.  Thus, the Court will defer ruling on defendants' motion at this time.

**III.    Motion to Suppress Quinn's Post-Arrest Statements as Violative of <u>Miranda</u>**

Defendant Quinn has moved for the suppression of portions of his post-arrest statements because, he contends, they were elicited in violation of his Fifth Amendment right to have the assistance of counsel during a custodial interrogation.  <u>See</u> Def. Quinn's Mem. Supp. Mot. to Suppress at 1, 4.  Both the defendant and the government agree that the relevant legal standards are provided by <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), and its progeny.  The only meaningful dispute involves the facts surrounding the questioning of Quinn by federal agents at the courthouse in Lexington, Kentucky, in the hours after his arrest on December 28, 2004, and prior to his initial appearance in court.

At the motions hearing held on October 14, 2005, the Court heard testimony about the relevant events from the two agents who questioned Quinn following his arrest, Special Agent Scott Douglas of the Commerce Department's Bureau of Industry and Security and Special Agent Richard Reinhold of the Bureau of Immigration and Customs Enforcement.  Each testified that Quinn signed a waiver of his <u>Miranda</u> rights before they began the interrogation, and each provided an account of Quinn's subsequent invocation of his right to have an attorney present.  They testified separately that Quinn's refusal to answer questions without a lawyer was prompted by an attempt to show him documents that they said contradicted his statements.  Each stated that they immediately refrained from showing Quinn the documents or asking him about them, and

that, once the documents were put away, Quinn reaffirmed his willingness to continue to answer

their questions without an attorney present (i.e., he re-waived his <u>Miranda</u> rights).

Quinn, who was, by all accounts, the only other person present during this exchange with

the agents, chose not to testify at the hearing.  Instead, Quinn's lawyers, in an effort to impeach

the agents, offered the testimony of Quinn's two daughters, who witnessed Quinn's arrest at his

home and had interactions with agents Douglas and Reinhold at that time.  Although the

daughters' testimony conflicted to some extent with the agents' accounts of the events that

occurred at the Quinn home, those inconsistencies were not, in the Court's view, sufficient to

undercut the credibility of the agents with respect to what happened after they left the house,

went to the courthouse, and there questioned Quinn.  The Court, lacking a sufficient basis to find

that the agents' testimony was incredible, and having before it no contradictory testimony about

the events surrounding Quinn's invocation of his <u>Miranda</u> rights with respect to questioning

about documents and his subsequent affirmance of a willingness to continue answering

questions, cannot conclude that Quinn's statements following that limited invocation and

renewed waiver were obtained in violation of his Fifth Amendment rights.  Hence, the Court will

deny defendant Quinn's motion to suppress those statements.

## IV.     Government Motion to Admit Statements into Evidence under Rule 404(b)

The government has moved *in limine*, pursuant to Rule 404(b) of the Federal Rules of

Evidence, to admit testimony by federal agents about allegedly false statements the defendants

made during interviews.  <u>See</u> Gov't Mot. to Admit 404(b) Evid.  Rule 404(b) provides that

"[e]vidence of other ... acts ... is not admissible to prove the character of a person in order to

show action in conformity therewith," but it "may ... be admissible [to prove] motive,

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The government contends that the statements demonstrate "consciousness of guilt" on the part of

defendants and, therefore, should be admissible because evidence of prevarication "comes under

the inclusionary provision of Rule 404(b)" to the extent that the deception is probative of

consciousness of guilt.  See United States v. Johnson, 46 F.3d 1166, 1171 (D.C. Cir. 1995).  In

making this motion, the government appears to be anticipating -- and attempting to pre-empt -- a

defense challenge to the admissibility of the statements.

The government, however, misapprehends the function of Rule 404(b).  The rule

categorically precludes one particular theory of relevance -- the so-called "propensity inference"

(i.e., that a person's past actions reflect a particular trait of character, which, in turn, makes it

more likely that the person acted in conformity with that trait on a particular occasion) -- and it

goes on to emphasize the narrowness of the restriction by offering examples of other proper

theories of relevance under which the same evidence may be received.  See United States v.

Crowder, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (*en banc*).  But "compliance with Rule 404(b)

does not *assure* admission" of evidence.  See id. (emphasis added) (citing Huddleston v. United

States, 485 U.S. 681, 688 (1988)).  That is to say, even if past-act evidence were offered for a

proper purpose under Rule 404(b) -- such as the one the government suggests -- it still would be

subject to objection under Rule 403, which excludes relevant evidence if "its probative value is

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

the jury, or by considerations of undue delay, waste of time, or needless presentation of

cumulative evidence."  See Fed. R. Evid. 403.[4]

Simply put, the Court cannot "admit evidence" under Rule 404(b), as the government requests; rather, it can, at most, make a determination that Rule 404(b) is not offended by the admission of evidence.  But, as the government's position on this issue demonstrates, even that may be unnecessary in this circumstance, where the defense has yet to object to admission (on Rule 404 grounds or otherwise).  That is because the government contends that exculpatory statements made by a defendant to a law-enforcement officer have independent probative force as circumstantial evidence of guilt, when presented along with evidence contradicting the truth of the assertions.  See Gov't Mem. Supp. Mot. to Admit 404(b) Evid. at 9, n.6.  In other words, the government asserts that the statements are relevant, and therefore admissible, irrespective of their tendency to show defendants' "consciousness of guilt."  Specifically, the government asserts that the defendants' denials that they had any knowledge of CMHC products being sent to Iran via the United Arab Emirates are directly probative of an element of the charged crime: knowledge of illegality.[5]  If the Court were to agree with the government's theory of admissibility, Rule 404(b) would be irrelevant because the only basis on which defendants could object to admission would be "that the evidence is 'unfairly prejudicial, cumulative or the like, its relevance notwithstanding.'"  See Crowder, 141 F.3d at 1206-07.

_____

[4] The government, in fact, acknowledges this point in its brief.  See Gov't Mem. Supp. Mot. to Admit 404(b) Evid. at 8.

[5] The defendants counter that, whether or not the statements tend to show that they knew at the time they made the statements that it was illegal to sell U.S.-origin products to Iran via a third country, evidence of such knowledge is not probative of whether the defendants knew about and understood the details of the trade embargo many months earlier, when the shipments occurred.  See Defs.' Opp. to Gov't Mot. to Admit 404(b) Evid. at 10.  The Court expresses no opinion on the relevance of the statements at this time.

The fact that Rule 404(b) requires prosecutors to give defendants pre-trial notice of intent to use evidence of prior acts, crimes, or wrongs does not make it proper for the Court to admit such evidence *in limine*, as the government asserts.  <u>See</u> Gov't Opp. to Defs.' Mot. to Exclude Proffer at 6.  That provision of the rule simply ensures that defendants will have an adequate opportunity to prepare an objection on Rule 404 grounds; here, however, defendants have not yet made such an objection.

Thus, the Court will defer ruling on the government's Rule 404(b) motion to allow the agents to testify about the defendants' exculpatory statements and the defendants' related motion to exclude the government's proffer of defendants' alleged false statements.

## V.      Confrontation Clause Objections to Use of Co-defendants' Statements

### A.      Quinn's Statements

Defendant Holland has requested, pursuant to his Sixth Amendment right to confront witnesses against him, that the Court exclude any testimony by federal agents about statements that his co-defendant, Quinn, made during interviews with the agents.  To the extent that any statements by Quinn, as recalled by the agents, would be testimonial evidence by Quinn *against Holland*, the Confrontation Clause of the Sixth Amendment requires the Court to prohibit their use at trial.  <u>See</u> <u>Crawford v. Washington</u>, 541 U.S. 36, 59 (2004) (prohibiting the use of testimonial out-of-court statements by an unavailable declarant unless the defendant has had a prior opportunity to cross-examine the declarant about the statements); <u>United States v. Brodie</u>, 326 F.Supp. 2d 83, 94-95 (D.D.C. 2004) (citing <u>Bruton v. United States</u>, 391 U.S. 123, 137 (1968)) ("[W]here two defendants are tried jointly, the pretrial statements of one may not be admitted against the other unless the confessing defendant takes the stand, even if the jury is

-12-

instructed not to consider the statements against the separate, implicated defendant.").[6]  The

government, however, is entitled to introduce Quinn's statements as evidence *against Quinn*

without offending the Sixth Amendment.

Where the government has elected to try defendants jointly, the Court must take care to

ensure that any out-of-court statements by one defendant are used as evidence only against *that*

*defendant*, and not against the co-defendant.  The Supreme Court, in Bruton and subsequent

decisions, has said that it is insufficient for a Court simply to give a limiting instruction to jurors,

admonishing them to use out-of-court statements by one defendant only against that defendant, if

the statements either directly incriminate the co-defendant or do so by obvious and immediate

inference.  See Brodie, 326 F.Supp. 2d at 95-96 (citing Richardson v. Marsh, 481 U.S. 200, 209

(1987), and Gray v. Maryland, 523 U.S. 185, 186 (1998)).  If, however, a statement can be

redacted to avoid any potential to inculpate the co-defendant -- aside from the attenuated

inference of guilt by association, which the jury is instructed is impermissible in joint trials --

then the co-defendant has no Sixth Amendment objection.  See id.[7]

---

[6] Defendant Holland's motion presumes that Quinn will not testify at trial, exercising his Fifth Amendment right not to be compelled to testify against himself, and therefore would be unavailable for cross-examination as to the truth of his statements.  Were Quinn to testify at trial, Holland would have no Confrontation Clause objection to the introduction of Quinn's out-of-court statements.  And, of course, the same would be true for Quinn if Holland elects to testify.

[7] To the extent that defendants' briefs can be read to suggest that the Supreme Court's decision in Crawford alters the Bruton analysis, the Court rejects that assertion.  A Bruton-compliant statement does not offend the Sixth Amendment rights of a non-declarant co-defendant -- notwithstanding that the statement may be deemed "testimonial" and that there was no opportunity for cross-examination -- because, insofar as it complies with the requirements of Bruton and its progeny, the declarant's statement cannot be considered testimony against the accused party who is objecting; it is only testimony *against the declarant*.  See Crawford v. Washington, 541 U.S. 36, 51 (2004) ("the Confrontation Clause ... applies to 'witnesses' against the accused -- in other words, those who 'bear testimony'" against the defendant). See also United

In this case, the government has pledged to delete from the agents' report of Quinn's interview all references to statements by Quinn that mention Holland, and to correspondingly limit all testimony by the agents.  See Gov't Opp. to Def. Holland's Mot. to Exclude Quinn Statements at 2.  The Court concludes that this deletion and limitation, along with an admonition from the Court to jurors that they may consider Quinn's statements as evidence against Quinn alone, eliminates any Sixth Amendment objection that Holland may have to testimony about Quinn's statements to the agents.  Hence, the Court will deny defendant Holland's motion to exclude testimony by the agents about Quinn's statements

## B.    Holland's Statements

Defendant Quinn has lodged a nearly identical objection to testimony by the agents about out-of-court statements made by Holland that tend to implicate Quinn.  Once again, the government has pledged to sanitize Holland's statements so as to eliminate any incriminating references to Quinn.  See Gov't Opp. to Def. Quinn's Mot. to Exclude Holland Statements at 2. The government has said it will delete entirely two of the three statements made by Holland that mention Quinn.  See id. (offering to delete Holland's purported statement to agents that "he didn't think [Quinn] was aware of any companies in Iran either"); Gov't Resp. to Def. Holland's Reply Mem. at 2 (stating that the government would not in any way use Holland's purported statement that "Quinn ... passed on the information regarding the Dubai customer").  Additionally, the government has proposed to edit a third purported Holland statement to remove any reference to Quinn.  See Gov't Opp. to Def. Quinn's Mot. to Exclude Holland Statements at 2 (proposing to

States v. Lung Fong Chen, 393 F.3d 139, 150 (2d Cir. 2004) ("The same [conditions] that prevent[] Bruton error also serve[] to prevent Crawford error. ... [W]e see no indication that Crawford ... expands the holding of Bruton.").

redact Holland's statement that he "remembered conversations in late 2003 with Dave Tatum ...

and Quinn" during which "Tatum told Quinn and Holland to 'not sell to Iran'" as follows:

"Holland remembered conversations in late 2003 with Dave Tatum ....  According to Holland,

Tatum told Holland to 'not sell to Iran.'").  For the reasons stated above, the Court finds that these

modifications to Holland's statements remove any concern about Quinn's Sixth Amendment

rights and, therefore, the Court will deny Quinn's motion to exclude testimony by the agents

about Holland's statements.

      Holland, however, raises a separate objection to the proposed redaction of the third

statement.[8]  He contends that, by allowing the government to edit the statement as it has proposed

and by, correspondingly, limiting testimony by the agents about the content of the statement, the

Court would violate the rule of completeness.  That rule prohibits the admission of a redacted

statement "where admission of the statement in its edited form distorts the meaning of the

statement or excludes information substantially exculpatory of the defendant."  See United States

v. Singh, 973 F.Supp. 7, 15 (D.D.C. 1997) (quoting United States v. Washington, 952 F.2d 1402,

1404 (D.C. Cir. 1991)).  Holland says the proposed redaction has just such an effect, rendering

his statement about his conversations with Tatum more inculpatory of him than it would be

absent redaction.  See Def. Holland's Reply Mem. at 2.  The Court, however, does not believe

that removing references to Quinn from the statement distorts its meaning or excludes

substantially exculpatory information.  To the extent the statement is inculpatory of Holland, it

would not be any less so (nor would it become *exculpatory*) if Holland could also show that

---

[8] Holland had objected to another redaction that the government had proposed, but that
was rendered moot by the government's subsequent pledge not to make any use of the statement.

Quinn was a party to the 2003 conversation with Tatum.  Indeed, one might view the full statement, drawing both Quinn and Holland into the conversation, as *more* inculpatory of Holland on the conspiracy charge.  Therefore, the Court will overrule Holland's objection to the proposed redaction and will permit testimony by the agents consistent with the government's proposal.

### CONCLUSION

For the foregoing reasons and based on the entire record, the Court will (1) grant in part and deny in part defendants' motion to compel the government to produce purported <u>Brady</u> material; (2) defer ruling at this time on defendants' request for a hearing on the admissibility of testimony about alleged co-conspirator statements; (3) deny defendant Quinn's motion to suppress portions of his post-arrest statements to federal agents; (4) defer ruling on the government's motion to admit statements into evidence under Rule 404(b) and defendants' related motion to exclude the government's proffer of defendants' alleged false statements; and (5) deny defendant Holland's motion to exclude statements made to federal agents by Quinn and defendant Quinn's motion to exclude statements made to the agents by Holland.  A separate order has been issued on this date.

_____/s/ John D. Bates_____<br>JOHN D. BATES<br>United States District Judge

Dated:  <u>October 25, 2005</u>

Copies to:

Jay I. Bratt
Laura A. Ingersoll
OFFICE OF THE U.S. ATTORNEY FOR THE DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
Email: jay.bratt@usdoj.gov
Email: laura.ingersoll@usdoj.gov

 *Counsel for the United States*


Aitan Dror Goelman
ZUCKERMAN SPAEDER, LLP
1800 M Street, NW
Washington, DC  20036-5802
Email: agoelman@zuckerman.com

Larry A. Mackey
BARNES & THORNBURG, LLP
11 South Meridan Street
Indianapolis, IN  46204
Email: larry.mackey@btlaw.com

 *Counsel for defendant Robert E. Quinn*


Richard E. Plymale
FROST BROWN TODD, LLC
250 West Main Street, Suite 2700
Lexington, KY  40507-1749
Email: rplymale@fbtlaw.com

Robert Martin Adler
Paul L. Knight
O'CONNOR & HANNAN, LLP
1666 K Street, NW, Suite 500
Washington, DC  20036
Email: radler@oconnorhannan.com
Email: pknight@oconnorhannan.com

 *Counsel for defendant Michael H. Holland*